IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:12-cv-1059 |
| UNITED STATES OF AMERICA, et al. | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant the United States of America's ("Defendant") Motion for Summary Judgment, and Plaintiff Deutsche Bank National Trust Company's ("Plaintiff" or "Deutsche Bank") Motion for Summary Judgment. Plaintiff Deutsche Bank is a national banking association and the assignee and servicer of the rights of the beneficiary under a deed of trust encumbering 9303 Braymore Circle, Fairfax Station, Virginia ("the property"). Defendants Morrell C. Gaines and Cheryl Berry-Gaines are record owners of the property; Defendant United States of America has interests of record in the property.

In February 2001, Defendants Morrell C. Gaines and Cheryl Berry-Gaines (the "Gaines Defendants") purchased the property. The purchase of the property was financed by a loan from IndyMac

1

Bank, F.S.B. ("IndyMac") and secured by a deed of trust on the property ("IndyMac Loan I"). On or about April 2, 2002, a Department of Justice Notice of Lien for Fine and/or Restitution Imposed Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 in the amount of $689,216.86, plus interest of 2.03% from January 10, 2002, against Defendant Morrell C. Gaines, was recorded among the land records of the Circuit Court of Fairfax County, Virginia. In June 2003, the Gaines Defendants refinanced their original loan, giving a promissory note and deed of trust securing the property to IndyMac ("IndyMac Loan II"). IndyMac released the original deed of trust. The HUD-1 Settlement Statement shows that the proceeds of the loan were used to satisfy IndyMac Loan I, as well as multiple creditors of the Gaines Defendants. The excess of $14,359.12 went to the Gaines Defendants. The settlement file generated in connection with IndyMac Loan II contains a document entitled "Capital Title Services" dated April 22, 2003, which lists the restitution lien filed by the Department of Justice on April 2, 2002. In September 2003 the Internal Revenue Service filed a Notice of Federal Tax Lien against Defendant Morrell C. Gaines.

In July 2008, IndyMac was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was named conservator. The FDIC sold the assets of

IndyMac at auction to OneWest Bank F.S.B. ("OneWest") in March, 2009. OneWest assigned the IndyMac Loan II deed of trust to Deutsche Bank in 2003. The Gaines Defendants later defaulted under the Note and Deed of Trust on IndyMac Loan II. The IndyMac Loan II was referred for foreclosure in October 2011. A title search performed in connection with the foreclosure disclosed the intervening federal restitution lien. A claim has been made under the title insurance policy, and the claim has been accepted under a reservation of rights.

In August 2012, Plaintiff Deutsche Bank brought the instant case against the United States and the Gaines Defendants. In September 2012, the case was removed from the Circuit Court of Fairfax County. In May 2012, the United States moved for summary judgment and Deutsche Bank filed a cross motion for summary judgment.

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "The burden of the moving party . . . may be discharged by simply pointing out 'that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The Court construes all reasonable inferences in favor of the non-moving party when determining whether there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The mere existence of some disputed facts does not merit a trial unless the disputed facts are material to an issue necessary for proper resolution of the case and the quality and quantity of the evidence offered to support a question of fact are adequate to support a jury verdict. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

A judgment for restitution in favor of the United States "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of

4

the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). Under federal law, the relative priority to be given a federal tax lien as compared to other state created lien claims is determined according to the "first in time is the first in right" rule. See 26 U.S.C. § 6323; United States v. McDermott, 507 U.S. 447 (1993); United States v. Equitable Life Assurance Soc'y, 384 U.S. 323, 327-28 (1966)("As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule 'first in time is first in right,' which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was 'specific and perfected.'"). The restitution lien against Defendant Gaines was filed and perfected on April 2, 2002, and the IndyMac Loan II deed of trust was filed in June 2003. The restitution lien is the first priority lien on the Property.

Nonetheless, Plaintiff Deutsche Bank seeks to equitably subrogate its lien, IndyMac Loan II, over the prior recorded federal restitution lien. The federal tax lien priority statute addresses such a claim, under 11 U.S.C. §6323(i)(2), "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of [a federal tax lien]." Thus, federal law adopts state law in regard to equitable

5

subrogation, and so this Court, under federal lien priority law, looks to Virginia law regarding the equitable subrogation claim here.

Generally, in order to seek equitable subrogation the person must have paid the debt, and have paid it under necessity to save himself from loss which might arise or accrue to him by the enforcement of the debt in the hands of the original creditor. Aetna Life Ins. Co. v. Town of Middleport, 124 U.S. 534, 547-48, 8 S. Ct. 625, 629 (1888). In other words, one who volunteers to pay a debt may not then attempt to evoke equitable subrogation. See Burton v. Mill, 78 Va. 468 (1884). Additionally, subrogation is not appropriate where intervening equities are prejudiced. See Centreville Car Care, Inc. v. N. Am. Mortgage Co., 263 Va. 339, 345, 559 S.E.2d 870, 872 (2002); Nalle v. Farrish, 986 Va. 130, 34 S.E. 985, 986 (1900)(subrogation permitted where its application "will not work injustice to any one"); Bankers' Loan & Inv. Co. v. Hornish, 94 Va. 608, 27 S.E. 459, 460 (1897)(subrogation permitted where there is "no intervening equity that is prejudiced"). The "doctrine is not dependent upon contract, nor upon privity between the parties; it is the creature of equity, and is founded upon principles of natural justice." Fed. Land Bank of Baltimore v. Joynes, 179 Va. 394, 401, 18 S.E.2d 917, 920 (1942)(quoting Hudson v. Dismukes, 77 Va. 242, 246 (1883))

Further, negligence of the subrogee does not bar subrogation, but the Virginia Supreme Court has found the existence of an alternative remedy, namely an action against the title examiner or the title insurance policy, to be relevant in determining whether the equities strongly favor the subrogee. See Centerville Car Care, 559 S.E.2d at 874.

At the time of IndyMac Loan II, IndyMac had no interest that required protection as it had a first priority secured protected interest in the property with IndyMac Loan I. It appears IndyMac was simply refinancing, and generating a new, larger loan. Plaintiff has not set forth any compelling evidence that demonstrates that IndyMac generated IndyMac Loan II in order to protect its own interests. Moreover, the IndyMac Loan II not only covered the amount necessary to pay off the original loan, but was also enough to pay off several subordinate creditors and provide the Gaines Defendants an excess of $14,359.12.

Further, the intervening equities of the United States, and the victims of Defendant Morrell C. Gaines whom the restitution payments would go to, would be clearly prejudiced by the application of equitable subrogation. Awarding IndyMac Loan II primary placement would place the restitution lien in an unfair secondary position notwithstanding its priority lien on the property due to the "first in time first in right" rule. In the

balance of equities the Court considers the fact that IndyMac produced a second loan, IndyMac Loan II, in the face of a title search document that clearly identified the federal restitution lien. The equities do not favor Plaintiff, and therefore this Court declines to apply the doctrine of equitable subrogation.

Plaintiff also argues that that the doctrine of replacement applies, allowing IndyMac Loan II to retain the priority of IndyMac Loan I to the extent that its terms are not prejudicial to the criminal restitution lien. First, the terms of IndyMac Loan II are prejudicial to the restitution lien for the reasons previously stated, and particularly due to the fact that the terms of IndyMac Loan II covered much more than just IndyMac Loan I. Additionally, federal law determines the priority of competing liens asserted against the taxpayer's property. Aquilino v. United States, 363 U.S. 509, 514 (1960). The relative priority of a state lien, as compared to a recorded federal tax lien, is determined by the first in time first in right rule. United States v. Equitable Life Assurance Soc'y, 384 U.S. 323, 327-28 (1966). Plaintiff makes an unavailing argument for the application of replacement, and points to no statute or case on point that indicates it has the right to have its refinanced loan take the position of the original loan, above the federal restitution lien. For the aforementioned

reasons, Defendant's Motion for Summary Judgment should be granted.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
July 31, 2013